**Lorraine WANHAM, as parent and next friend of Q.W., Plaintiff,**

v.

**EVERETT PUBLIC SCHOOLS and Bureau of Special Education Appeals, Massachusetts Department of Education, Defendants.**

**Civil Action No. 06–11899–NMG.**

United States District Court,
D. Massachusetts.

March 13, 2008.

Iraida J. Alvarez, Amy Spector, Attorney General's Office, Boston, MA, for Defendant Bureau Special Education Appeals.

Doris R. MacKenzie Ehrens, Murphy, Hesse, Toomey, and Lehane, Quincy, MA, for Defendant Everett Public Schools.

## MEMORANDUM & ORDER

GORTON, District Judge.

On October 16, 2006, plaintiff Lorraine Wanham ("Wanham"), as parent and next friend of Q.W., her minor child, filed a *pro se* complaint against Everett Public Schools ("Everett") and the Bureau of Special Education Appeals, Massachusetts Department of Education ("BSEA") ap-

pealing an adverse BSEA decision and alleging a number of other pendent state law claims. Numerous motions have been filed including motions for summary judgment by all three parties.

## I. *Background*

### A. Factual Background [1]

Wanham is the mother of minor child Q.W., whose name is kept confidential for the purpose of these proceedings. Wanham claims that Q.W. has specific learning disabilities that are not being properly addressed by the Everett public school system.

Beginning in his third grade year (i.e., 1999) and continuing through the eighth grade, Q.W. received services pursuant to fully-accepted Individualized Education Programs ("IEPs"). Q.W. entered Everett High School in ninth grade for the 2004–2005 school year while his 2003–2004 IEP was still in effect. He was assigned a special education inclusion teacher, Ms. Theodoridis ("Theodoridis"), to act as liaison to his regular teachers. Theodoridis and another special education teacher, Mr. Ruiz ("Ruiz"), were supposed to check in with Q.W. and his teachers to monitor his progress. Wanham disputes the extent to which Theodoridis and Ruiz actually provided services. Although Q.W.'s IEP expired in December, 2004, Everett did not convene a meeting of "the TEAM" (meaning the parent, representative teachers and administrators and, when appropriate, Q.W.) to develop a new IEP until March 21, 2005. Everett contends that Wanham agreed to postpone the TEAM meeting but Wanham disputes that. At the March meeting, Everett TEAM members decided to extend Q.W.'s special education eligibili-

ty and to conduct his three-year reevaluation but the parties did not develop a new plan or amend the existing IEP at that meeting.

After the evaluations, at TEAM meetings on May 9, 2005 and June 16, 2005, the Everett members of the TEAM concluded that Q.W. no longer met the criteria for continued special education services. Wanham argued that Q.W. had a language-based disability, so the TEAM agreed to an extended evaluation. When that evaluation period expired on August 12, 2005, the parties agreed to extend it again so that Wanham could have an independent evaluation conducted. In the meantime, Q.W. received academic support that conformed with his preceding IEP.

Wanham had Q.W. evaluated by Dr. Joseph Moldover, a neuropsychologist, in September and October, 2005. Dr. Moldover recommended that Q.W. continue to have an IEP due to difficulties he had with written expression. At an extended meeting on November 18, 2005, the TEAM failed to reach agreement as to whether Q.W. remained eligible for special education services.

The following week Everett issued a finding of no eligibility and shortly thereafter filed a hearing request with BSEA to determine whether Q.W. remained eligible for special education services. A hearing was scheduled for January 5, 2006 and Everett subsequently requested and was granted postponement of the hearing on two occasions. A prehearing conference was held on March 31, 2006, at which Everett asked to be able to reconvene the TEAM to consider the evaluation of Jody Gray, an educational consultant Wanham

---

**1.** Throughout this litigation, Wanham has filed a number of documents docketed as "letter/request" and "Proposed Document(s)" that appear to request that the Court supplement the record. These filings have been

considered in the Court's statement of the facts and its legal analysis and information from those filings has been included when appropriate.

had retained. Over the objections of Wanham, Everett also sought postponement of the hearings scheduled for April 11 and 12, 2006 to allow the TEAM to consider Gray's report and to develop an IEP if appropriate. Those requests were allowed.

Gray's report, sent to Everett on April 20, 2006, stated that the TEAM's decision finding that Q.W. was ineligible for special education services was incorrect. A TEAM meeting was convened on April 25, 2006 and lasted six hours. The TEAM ultimately determined that Q.W. remained eligible for special education and developed an IEP to address his difficulties ("the Proposed IEP"). Everett offered additional compensatory education services but Wanham rejected them, choosing instead to refer the extent of compensatory services to the BSEA.

Supportive services were provided to Q.W. beginning in April, 2006 despite the absence of a new accepted IEP. On May 5, 2006, Wanham rejected the entire Proposed IEP and requested that Everett place Q.W. at the Landmark School during the 2006 summer program and for the 2006–2007 academic year.

A hearing on Wanham's claims was conducted by BSEA hearing officer Joan Beron ("Beron") on May 25, May 26 and June 8, 2006. Beron issued her ruling on July 20, 2006. In it, she found that although Everett's failure to implement inclusion support during Q.W.'s ninth grade did not deny Q.W. a free and appropriate public education ("FAPE"), the failure to provide the supportive services set forth in Q.W.'s IEP impacted Q.W.'s ability to make meaningful education progress and denied him FAPE. Accordingly, Beron found that Q.W. was entitled to two, 50–minute periods per week or 67 sessions of compensatory education for missed services in the ninth grade and 11 additional "pull-out" sessions from those missed at the beginning of tenth grade.

Beron also found that, based on the information provided to it in November 2005, the TEAM should have concluded that Q.W. required services and accommodations. Consequently, Beron found Q.W. entitled to two sessions of instruction in written expression from the time the IEP should have been implemented (i.e., December 1, 2005) until the date Everett began providing services in April 2006. Beron also found that the Proposed IEP rejected by Wanham on May 5, 2006 could, with some minor adjustments, be made appropriate and be implemented by Everett. With respect to the other alleged procedural defects, Beron found that any errors did not constitute a denial of FAPE or were not outcome determinative.

Wanham now appeals that ruling in accordance with the federal Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and Chapter 71B of Massachusetts General Laws and the regulations promulgated thereunder. In addition to the appeal of the BSEA ruling, Wanham contends that the BSEA hearing officer did not follow proper procedures when conducting the hearing, that she was not impartial and that her ruling was unreasonable as a matter of law.

## B. Procedural History

In April, 2007, six months after the complaint was filed, both Everett and the BSEA filed motions to dismiss the complaint in its entirety or, in the alternative, to dismiss the pendant state law claims. On August 14, 2007, 515 F.Supp.2d 175, this Court allowed the motions to dismiss the state law claims but denied the motions with respect to the appeal of the BSEA decision pursuant to the IDEA ("the August 14 M & O"). The Court took under advisement Q.W.'s Motion to Supplement Record, Everett's Motion to Strike and BSEA's Motion for a Protective

Order. Prior to the entry of the August 14 M & O, Wanham also filed a letter with the Court that appears to be a motion to amend her complaint. Since the August 14 M & O, Everett has filed a Motion to Amend Memorandum and Order, Wanham has filed a Motion to Supplement Record and all three parties have filed Motions for Summary Judgment.[2] BSEA and Everett have opposed Wanham's summary judgment motion and Wanham has filed a response to BSEA's Statement of Material Facts. All pending motions are resolved as follows.

## II. Motions to Supplement Record by Q.W. (Docket No. 35) and by Wanham (Docket No. 57)

The First Circuit Court of Appeals has asserted that "a party seeking to introduce additional evidence [in an IDEA appeal] at the district court level must provide some solid justification for doing so." *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 996 (1st Cir.1990). For substantially the same reasons as those outlined in the opposition of Everett and BSEA to the motions to supplement, this Court finds that Q.W. and Wanham have not presented a sufficient justification for supplementing the record and therefore their motions to supplement will be denied.

## III. Everett's Motion to Strike (Docket No. 39)

In response to a letter submitted to the Court by Wanham on June 8, 2007, Everett filed a motion to strike and, to the extent the letter requested leave to file a tape or DVD, opposed that request. Wanham has since filed a DVD with the Court. For substantially the same reasons as those outlined in Everett's memorandum, the DVD will not be considered as part of the record in this case. This Court will not, however, strike either the letter or the DVD from the docket. The letter is deemed to be a motion to supplement the record and the DVD is an exhibit to that motion. Although the "motion" will be denied, this Court need not strike it or the "exhibit" from the docket. Everett's Motion to Strike will be denied.

## IV. Wanham's Letter Requesting Amendment to the Complaint (Docket No. 44)

On July 17, 2007, Wanham submitted a letter to the Court requesting "that this document be Appendix # 20 to the Complaint filed with BSEA on April 24, 2007". The July 17 letter was denoted as a "non-motion" on the docket. Closer inspection of the letter reveals that Wanham wanted to amend the complaint to appeal from an adverse BSEA decision rendered June 28, 2007. Neither Everett nor BSEA responded to the request.

Fed.R.Civ.P. 15(a)(2) states that once a pleading has been responded to, it may be amended "only with opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." In this case, the BSEA and Everett have not consented and justice does not require the Court to allow amendment of the complaint. All parties have filed motions for summary judgment based on the appeal from the July 20, 2006, decision of the BSEA. A trial in this case is scheduled to begin on April 28, 2008. To permit Wanham to appeal from a July 17, 2007, BSEA decision as part of this action would, in essence, allow her to initiate an entirely new case at a very late stage in this litigation. Consequently, this Court will deny Wanham's requested

---

**2.** Wanham's motion for summary judgment was entered on the docket as a Motion for Attorney's Fees (Docket No. 63) but further examination reveals that it is, in fact, a motion for summary judgment.

amendment to the extent that it is a motion to amend the complaint.

## V. *Everett's Motion to Amend Memorandum and Order (Docket No. 52)*

The day after this Court issued its August 14 M & O, Everett filed a Motion to Amend Memorandum and Order "to Correct Applicable FAPE Standard Under Massachusetts Law in Statement of IDEA Regulatory Framework and/or for Reconsideration." It contends that this Court's statements outlining the FAPE required under Massachusetts law were incorrect and this Court agrees.

In its M & O, the Court erroneously stated that Massachusetts law

> includes a more exacting standard [and that a] Massachusetts IEP must be reasonably calculated "to assure the child's *maximum* possible development" in the "least restrictive environment".

Everett correctly points out that Mass Gen. Law Ch. 71B § 2 formerly required that children be provided with "the maximum possible development" but that as of January 1, 2002, the law was amended to require instead that children be provided with "a free and appropriate public education". St. 2000, c. 159, § 154. Free appropriate public education ("FAPE") is now defined in the Massachusetts statute to be

> special education and related services as consistent with [the IDEA], its accompanying regulations, and which meet the education standards established by statute or established by regulations promulgated by the board of education.

Mass. Gen. Law Ch. 71B § 1. Consequently, Everett's Motion to Amend will be allowed. The correct standard under Massachusetts law (which the Court will apply in this case) is discussed below.

## VI. *Cross–Motions for Summary Judgment*

### A. Legal Standard for Summary Judgment

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

## B. Legal Standard for Reviewing Decision of Administrative Hearing Officer

In any state receiving federal funds under IDEA, local school districts are required to provide FAPE to all children with special needs. 20 U.S.C. §§ 1400(c), 1412(a)(1)(A). A child in need of special education is entitled to an IEP which provides for his or her educational development in the least restrictive environment. 20 U.S.C. §§ 1412(a)(4), (5).

A district court reviewing an IEP must decide whether: 1) the state has complied with the procedures set forth in the IDEA and 2) the IEP is reasonably calculated to enable the child to receive educational benefits. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The education provided need not be ideal but it must provide the child with FAPE. *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1086 (1st Cir.1993)

■ The IDEA provides that in actions involving appeals from administrative decisions, a federal district court

(i) shall receive the records of the administrative proceedings;

(ii) shall hear additional evidence at the request of a party; and

(iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(C). The First Circuit Court of Appeals has stated that the IDEA "contemplates an intermediate standard of review on the trial-court level" requiring a more critical appraisal than clear-error review but well short of complete *de novo* review. *Lenn*, 998 F.2d at 1086. The court must also give "due weight" to the hearing officer's findings. *Lt. T.B. ex rel. N.B. v. Warwick Sch. Comm.*, 361 F.3d 80, 83–84 (1st Cir.2004). The plaintiff bears the burden of proving by a preponderance of the evidence that

the IDEA's standards were not met. *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 995 (1st Cir.1990).

## C. Wanham's Motion for Summary Judgment (Docket No. 63)

In Wanham's motion for summary judgment, she appears to argue that she is entitled to attorney's fees and costs for the Landmark summer program. Wanham objects to both the adequacy of the procedures and the substance of the BSEA's decision. These objections are addressed as follows.

### 1. Procedural Inadequacies at the Hearing

■ Wanham alleges that a number of procedural improprieties occurred with respect to the BSEA hearing. She first alleges that the hearing dates were improperly postponed or cancelled and that she was not informed of the requests for the postponements. The record demonstrates that a hearing was initially scheduled within 35 days of the receipt of the request for the hearing as required by the BSEA rules in effect at that time. Everett then requested and was granted two postponements. Wanham states that those postponements were improper but under the BSEA hearing rules, postponements may be granted for good cause. Hearing Rules for Special Education Appeals, Rule III(A). With respect to each of the postponements, Everett stated a valid reason. The record is silent as to whether Wanham was made aware of the requests for postponement and, although any failure on the part of Everett to inform her would violate BSEA hearing rules, such a discourtesy would not amount to a denial of due process. Wanham also does not indicate how the absence of a notice of postponement would violate the IDEA. The record indicates that Wanham's attorney was aware of and did not object to the postponements and that as a

result of the postponements, Everett reviewed the report of Wanham's expert and created an IEP accordingly.

Wanham also claims that the transcript of the subject hearing is incomplete. As both Everett and the BSEA point out, however, neither of those entities is responsible for the production of the transcript. Wanham does not provide the details of the alleged omissions or suggest that Everett or the BSEA conspired with the stenographer and therefore any omission in the transcript cannot be the basis of a claim against them. Moreover, some of the omissions apparently resulted from going "off the record" and, if Wanham was opposed to that procedure, she should have stated her objections at the time.

Wanham objects to Beron's conduct of the hearing, to wit that Beron: 1) did not allow Wanham enough time to present her evidence, 2) denied her request for a transcript, 3) referred to her as "mother" rather than "parent" in the BSEA decision and 4) denied her request that identifying information be removed from the BSEA decision.

With regard to not being allowed enough time to present her case, the hearing officer is authorized to "define issues" and to "ensure an orderly presentation of the evidence and issues". 603 C.M.R. 28.08(5)(c). Moreover, Wanham has not identified in her motion for summary judgment what information she sought to present but could not. With respect to the transcript, the administrative record indicates that a copy of it was sent to plaintiffs' counsel. The BSEA must provide free of charge "a" certified written transcription, which it did. Hearing Rules for Special Education Appeals, Rule XI(A)(7); XVI.

Wanham's objection to Beron's use of the word "mother" rather than "parent" to identify Wanham in her opinion is frivolous and devoid of any support of an allegation of gender bias. Although the BSEA may, at times, use the term "parent" in its opinions, "mother" is an appropriate way to describe Wanham's relationship to Q.W.

Finally, although Beron originally included what Wanham claimed to be objectionable identifying information about Q.W., she considered Wanham's objections and modified the wording of the opinion six days after originally issuing it. Neither the opinion in its original form nor the modifications suggest due process violations.

### 2. Substantive Decisions by the Hearing Officer

With respect to the substance of Beron's decision, Wanham complains that Beron 1) should have ordered placement of Q.W. at Landmark for the summer due to his regression, 2) erroneously required Wanham to demonstrate proof of harm, 3) erroneously concluded that the services of Ruiz and Theodoridis were the equivalent of services required under the IEP and 4) was incorrect when she stated that information on Landmark was not provided.

As to the placement at Landmark, even if regression was documented, that fact alone does not establish that Q.W. required an extended year at Landmark. Wanham has presented no indisputable facts that such a placement was warranted and, in fact, none of Wanham's experts testified that services at Landmark were needed. The two BSEA decisions Wanham cites do not support her position. One of the decisions sets out standards for when summer programming may be appropriate but does not support the proposition that the presence of regression mandates a summer placement and specifically placement at a particular school. *See* In re *Groton Dunstable Regional School District*, BSEA # 06–0890, 27–28 (December 28, 2006). The other case addresses the obligation of the school to compensate a

child for missed counseling sessions. In that case, the hearing officer determined that such sessions had to be made up in the summer because the student was attending a therapeutic day camp that would complement the counseling sessions. In re *Joseph v. Boston Public Schools*, BSEA # 06–3836 (June 6, 2006).

■ Wanham also contends that Beron erred in requiring her to show proof of harm when services described in the IEP were not provided. Although the law is not crystal clear on that point, most courts that have analyzed claims of failure to implement portions of an IEP examine the significance of such a failure and determine whether the child was denied any educational benefit or FAPE. *See, e.g., Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 348–50 (5th Cir.2000); *Maine Sch. Admin. Dist. No. 56 v. Ms. W.*, 2007 WL 922252, *7–8 (D.Me.); *Ross v. Framingham Sch. Comm.*, 44 F.Supp.2d 104, 118–19 (D.Mass.1999). Beron did not, therefore, err in requiring Wanham to show harm where services listed in the IEP were not delivered. Moreover, as to whether the support provided by Ruiz and Theodoridis was the equivalent of inclusion services, Wanham appears to misunderstand Beron's decision. Beron did not find that what Ruiz and Theodoridis provided was equivalent to inclusion services but concluded that despite the absence of those teachers, Q.W. was not denied FAPE.

Finally, Wanham provides no evidence that Beron's statement that information on Landmark was lacking is incorrect. Beron was clearly aware of the possibility of a Landmark placement but there is no indication that evidence was produced at the hearing to indicate whether Landmark would be an appropriate placement. Beron stated in the opinion that if she found that Everett could not provide appropriate compensatory services or if out-of-district placement was appropriate, the parties would explore Landmark as an option.

Because Wanham has failed to show that no genuine issue of material fact exists, her motion for summary judgment will be denied.

### 3. Wanham's Request for Attorney's Fees

In her "dispositive motion", Wanham requests attorneys' fees. Because she has not prevailed in this case, she is not entitled to attorneys' fees with respect to her litigation in this action. *See* 20 U.S.C. § 1415(i)(3)(B). As to attorneys' fees with respect to the BSEA hearing, as Everett points out, Everett prevailed on seven of the eight issues addressed in the BSEA's decision and, with respect to the eighth issue, Everett both admitted that it owed services and offered to provide them prior to the hearing. Consequently, Wanham was not a prevailing party and is not entitled to attorneys' fees.

### D. Everett's and BSEA's Motions for Summary Judgment (Docket Nos. 64 and 67)

The motions for summary judgment of the BSEA and Everett have not been opposed. Wanham has filed a response to the BSEA's statement of material facts. That response, rather than raising genuine issues of material fact, merely supplements the facts that Everett and the BSEA have provided, primarily with information contained in the administrative record. Wanham also contends that there are other unidentified disputes. Such vague assertions cannot overcome a motion for summary judgment.

■ Wanham refutes only one potentially material fact. She contends that she does "not remember making any agreements with [Theodoridis]". Presumably Wanham means to suggest that she did

not agree to postpone the TEAM meeting from December 2004 until March 2005. Beron found, based on notes of Theodoridis and witness testimony, that Wanham had agreed to the postponement. Regardless of whether Wanham agreed, however, Beron acknowledged that failure to convene a TEAM meeting when the IEP expired in December 2004 was a procedural error. Because services remained in place, however, Beron found that Q.W. was not denied FAPE despite the procedural error. Consequently, Wanham's challenge to Everett's contention that she agreed to the postponement of the December 2004 TEAM meeting does not present a genuine issue of material fact requiring trial.

Because the plaintiff has failed to elicit genuine issues of material fact in her response to the undisputed facts filed by defendants, has filed no opposition to the motions for summary judgment and, for the reasons stated in their memoranda in support, the Motions for Summary Judgment of Everett and BSEA will be allowed.

### VII. *BSEA's Motion for a Protective Order (Docket No. 47)*

Because this Court will allow BSEA's motion for summary judgment, it will deny as moot BSEA's motion for a protective order.

### ORDER

In accordance with the foregoing,

1) Plaintiffs' Motions to Supplement the Record (Docket Nos. 35 and 57) are **DENIED;**

2) Everett's Motion to Strike (Docket No. 39) is **DENIED;**

3) Wanham's Letter (construed as a motion) Requesting Amendment to the Complaint (Docket No. 44) is **DE-NIED;**

4) Everett's Motion to Amend Memorandum and Order (Docket No. 52) is **ALLOWED;**

5) Plaintiffs' Motion for Attorney Fees (construed as a motion for summary judgment) (Docket No. 63) is **DE-NIED;**

6) the motions of Everett and BSEA for Summary Judgment (Docket Nos. 64 and 67) are **ALLOWED;** and

7) BSEA's Motion for a Protective Order (Docket No. 47) is **DENIED AS MOOT.**

**So ordered.**